1    **WO**

2

3

4

5              **IN THE UNITED STATES DISTRICT COURT**

6              **FOR THE DISTRICT OF ARIZONA**

7

8    **SAMUEL J. FAULKNER,**              )
                                          )
9              **Plaintiff,**             )
                                          )
10             **v.**                     )    **CIV 06-02630 PHX MEA**
                                          )
11   **MICHAEL J. ASTRUE,**               )    **MEMORANDUM & ORDER**
     **Commissioner of Social**           )
12   **Security,**                        )
                                          )
13             **Defendant.**             )
     _____  )

14

15         The parties have consented to have all proceedings in

16   this case conducted before a United States Magistrate Judge

17   pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of

     Civil Procedure.

18

19         Plaintiff, Mr. Samuel Faulkner, who is represented by

20   counsel, brought this action pursuant to 42 U.S.C. § 405(g),

     seeking judicial review of the final decision of the

21   Commissioner of the Social Security Administration, Defendant

22   Michael Astrue (the "Commissioner"), denying Plaintiff's claim

23   for Social Security disability insurance benefits pursuant to

24   Title II of the Social Security Act, codified at 42 U.S.C. §§

25   401-433.

26         **I  Procedural History**

27         Plaintiff filed an application for disability insurance

28   benefits on January 26, 1999.  See Administrative Record on

Appeal ("R.") (Docket No. 15) at 158-66.  Plaintiff asserted he became unable to work on or about September 15, 1997.  Id. at 158.   Plaintiff had not worked since 1994.   Id.   Plaintiff previously filed two applications for Social Security benefits, in 1995 and in 1996, which were both denied.  Id. at 172.   The date Plaintiff was last insured for disability insurance benefits was December 31, 1999.  Id. at 28.

Plaintiff's 1999 application was denied initially and upon reconsideration.  Id. at 27, 97-100, 102-05.  Hearings were held on July 10, 2001, and on August 7, 2002, with regard to Plaintiff's eligibility for disability insurance benefits.  Id. at 1049-93 & 1095-1115.  In a decision issued September 17, 2002, an Administrative Law Judge ("ALJ") concluded Plaintiff was not disabled as that term is defined by federal statutes and, accordingly, that Plaintiff was not entitled to benefits. Id. 1007-18.  Plaintiff appealed this decision and the Social Security Appeals Council vacated the ALJ's decision and remanded the case for the resolution of specific issues.  Id. at 27-28, 1022-25.

Pursuant to the Appeals Council's decision, a supplemental hearing was conducted on September 13, 2005.  Id. at 1116-48.  Plaintiff was represented by counsel at the hearing, and Plaintiff testified at the hearing.  Id.   In a decision issued September 23, 2005, an ALJ concluded Plaintiff was not disabled as that term is defined by the Social Security regulations.  Id. at 27-36.

Plaintiff sought review of the ALJ's decision, finding him not disabled and not eligible for disability benefits, by

the Social Security Appeals Council.  Id. at 22.  The Appeals
Council denied review of the ALJ's decision, see id. at 11-14,
rendering the ALJ's decision the final decision of Defendant,
the Commissioner of the Social Security Administration, for
purposes of judicial review.  See 20 C.F.R. § 404.981 (2007).

Plaintiff filed a complaint for judicial review of the
decision denying benefits on November 2, 2006.  Plaintiff
alleges the ALJ erred in his findings of fact and application of
the law when concluding Plaintiff was not disabled as that term
is defined by the Social Security statutes.

## II   **Standard of review**

The Court has jurisdiction to review the final decision
of Defendant denying Plaintiff's application for Social Security
disability benefits pursuant to 42 U.S.C. § 1383(c)(3).  Each
party seeks judgment as a matter of law in their favor.

Judicial review of a decision of the Commissioner is
based upon the pleadings and the record of the contested
decision.  See 42 U.S.C. § 405(g) (2003 & Supp. 2007).  The
scope of the Court's review is limited to determining whether
the Commissioner, i.e., the ALJ, applied the correct legal
standards to Plaintiff's claim and whether the record as a whole
contains substantial evidence to support the ALJ's findings of
fact.  See id. § 423; Webb v. Barnhart, 433 F.3d 683, 686 (9th
Cir. 2005); Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir.
2001).  However, if an ALJ's legal error was harmless, i.e.,
there is substantial evidence in the record to support the ALJ's
conclusion on the challenged issue absent the legal error, the
case need not be remanded for further proceedings.  See Batson

1   v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th
2   Cir. 2004); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir.
3   1990); Booz v. Secretary of Health & Human Servs., 734 F.2d
4   1378, 1380 (9th Cir. 1984).

5          The Ninth Circuit Court of Appeals has stated an error
6   is harmless if it does not "materially impact" the ultimate
7   disability determination or if the error is not prejudicial to
8   the claimant, including when the error is made at a step of the
9   sequential process the ALJ was not required to take. See, e.g.,
10  Robbins v. Social Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)
11  (stating: "we have only found harmless error when it was clear
12  from the record that an ALJ's error was 'inconsequential to the
13  ultimate nondisability determination,'" and holding an "ALJ's
14  silent disregard of lay testimony about how an impairment limits
15  a claimant's ability to work" was not harmless error); Stout v.
16  Commissioner, Social Sec. Admin., 454 F.3d 1050, 1055-56 (9th
17  Cir. 2006); Selassie v. Barnhart, 203 Fed. App. 174, 176 (9th
18  Cir. 2006) (finding an ALJ's legal error in failing to document
19  his application of the "special technique" for evaluating
20  severity of mental impairments, as required by 20 C.F.R. §
21  404.1520a, was not harmless error because the claimant had
22  presented a "colorable claim of a mental impairment.").

23         Satisfying the substantial evidence standard requires
24  more than a mere scintilla but less than a preponderance of
25  evidence. See, e.g., Bustamante, 262 F.3d at 953. Substantial
26  evidence has been defined as the amount of relevant evidence a
27  reasonable mind would accept as adequate to support a
28  conclusion. See, e.g., Widmark v. Barnhart, 454 F.3d 1063, 1066

-4-

(9th Cir. 2006); <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir. 1999).   Evidence  is  insubstantial  if  it  is  overwhelmingly contradicted  by  other  evidence  in  the  administrative  record. <u>See</u> <u>Threet v. Barnhart</u>, 353 F.3d 1185, 1189 (10th Cir. 2003); <u>Kent v. Schweiker</u>, 710 F.2d 110, 114 (3d Cir. 1983); <u>Cullen v. Astru</u>,  480  F.  Supp.  2d  1258,  1262  (D.  Kan.  2007)  ("The determination  of  whether  substantial  evidence  supports  the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by  other  evidence  or  if  it  constitutes  mere  conclusion"); <u>Robison v. Barnhart</u>, 316 F. Supp. 2d 156, 163 (D. Del. 2004); <u>Rodriguez v. Barnhart</u>, 252 F. Supp. 2d 329, 332 (N.D. Tex. 2003);  <u>Rieder v. Apfel</u>,  115  F.  Supp.  2d  496,  501  (M.D.  Pa. 2000).  If the evidence with regard to an issue is in equipoise, the  Court  must  affirm  the  decision  of  the  ALJ.   <u>See</u>,  <u>e.g.</u>, <u>Bustamante</u>, 262 F.3d at 953; <u>Gwathney v. Chater</u>, 104 F. 3d 1043, 1045 (8th Cir. 1997); <u>Books v. Chater</u>, 91 F. 3d 972, 977-78 (7th Cir. 1996).  <u>But</u> <u>see</u> <u>Binion v. Chater</u>, 108 F.3d 780, 782 (7th Cir. 1997).  Additionally, "[w]hile inferences from the record can  constitute  substantial  evidence,  only  those  'reasonably drawn from the record' will suffice."  <u>Widmark</u>, 454 F.3d at 1066, <u>quoting</u> <u>Batson</u>, 359 F.3d at 1193.

Because  the  ALJ  is  responsible  for  weighing  the evidence, resolving conflicts, and making independent findings of fact, the Court may not decide the facts anew, re-weigh the evidence, and decide whether a claimant is or is not disabled. <u>See</u> <u>Lewis v. Apfel</u>, 236 F.3d 503, 509 (9th Cir. 2001); <u>Powers v. Apfel</u>, 207 F.3d 431, 434-35 (7th Cir. 2000).  As stated *supra*,

if the evidence can support either outcome, the reviewing court may not substitute its judgment for that of the ALJ, but must affirm the ALJ's decision.  <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005); <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201 (9th Cir. 2001); <u>Casey v. Secretary of Health & Human Servs.</u>, 987 F.2d 1230, 1233 (6th Cir. 1993).

### III   **Statement of the Law**

Title II of the Social Security Act provides for the payment of benefits to individuals who suffer from a "disability."  <u>See</u> 42 U.S.C. § 423(a)(1)(D) (2003 & Supp. 2007).

To establish eligibility for disability benefits under the Social Security Act, the claimant must show that: (1) he suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months, <u>see</u> <u>id.</u> § 423(d)(1)(A); and (2) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  <u>See</u> <u>id.</u> § 423(d)(2)(A).  If a claimant meets both of these requirements, he is by definition "disabled."  <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).

The Social Security Administration regulations prescribe a five-step sequential process for determining whether a claimant is "disabled."  <u>See</u> 20 C.F.R. § 404.1520 (2007).  The burden of proof is on the claimant throughout steps one through four.  <u>See</u> <u>Tackett</u>, 180 F.3d at 1098.  If a claimant is found

to be "disabled" or "not disabled" at any step in the sequential process, there is no need to proceed to the subsequent step(s). See id.

First, the claimant must establish he is not gainfully employed at the time of his application. See 20 C.F.R. § 404.1520(a)(4)(i) (2007). Next, the claimant must be suffering from a "medically severe" impairment or "combination of impairments." Id. § 404.1520(a)(4)(ii) ("If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled."). The third step is to determine whether the claimant's impairment meets or equals one of the "listed" impairments included in Appendix 1 to this section of the Code of Federal Regulations. See id. § 404.1520(a)(4)(iii). If the claimant's impairments meet or equal one of the impairments listed in Appendix 1, the claimant is conclusively "disabled." See id.

The fourth step of the process requires the ALJ to determine whether the claimant, despite his impairment, can perform work similar to work he has performed in the past. A claimant whose "residual functional capacity" allows him to perform "past relevant work" despite his impairments, will be denied benefits. See id. § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, at step five the burden shifts to the Commissioner to demonstrate the claimant can perform other substantial gainful work that exists in the national economy, given his residual functional capacity. See

1    id. § 404.1520(a)(4)(v); Tackett, 180 F.3d at 1098.

2         When assessing a claimant's residual functional
3    capacity, the Commissioner must consider the record opinions of
4    physicians.    Social Security Administration regulations
5    distinguish among the opinions of three types of physicians
6    regarding a claimant's residual functional capacity: (1) those
7    who treat the claimant (the "treating" physicians); (2) those
8    who examine but do not treat the claimant (the "examining"
9    physicians); and (3) those who neither examine nor treat the
10   claimant, but who review the claimant's file (the "nonexamining"
11   or "reviewing" physicians). See 20 C.F.R. § 404.1527(d) (2007);
12   Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

13        Additionally, the Social Security Administration
14   regulations instruct adjudicators to give greater weight to
15   medical opinions that are explained than to those that are not
16   explained, see 20 C.F.R. § 404.1527(d)(3) (2007), and to the
17   opinions of specialists concerning matters relating to their
18   specialty over those of nonspecialists. See id. §
19   404.1527(d)(5). See also Holohan, 246 F.3d at 1201-02; Saelee
20   v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).

21        **IV  Statement of Facts**

22        Plaintiff was born in 1963.  Plaintiff graduated from
23   high school, and completed two years of college in 1995 through
24   1997.  R. at 169.  Plaintiff also attended DeVry Institute of
25   Technology in 1999 and 2000.  Id. at 205-08, 212-27.  Plaintiff
26   previously worked as a United States Army aircraft electrician,
27   and as a concrete worker, and as assistant manager in a

28

restaurant.  <u>Id.</u> at 164.[1]

The date Plaintiff was "last insured" for Social
Security disability insurance benefits was December 31, 1999.
Accordingly, to receive disability insurance benefits Plaintiff
had to establish he was "disabled," i.e., not capable of
performing work available in the national economy despite his
severe physical and mental impairments, on or before December
31, 1999.  In the application for disability insurance benefits
at issue in this case, Plaintiff asserts he became unable to
work as of September 15, 1997.  Accordingly, the issue before
the ALJ and the Court is whether or not the record supports a
conclusion Plaintiff was "disabled" during the time period
September 15, 1997, through December 31, 1999.

Plaintiff was honorably discharged from service in the
United States Army, due to physical conditions, in 1994.
Plaintiff receives monthly veterans' disability payments.  <u>Id.</u>
at XX.  Plaintiff began schooling to become an accountant in
1995, however, he took a medical leave from school in 1997 to
address his alcohol addiction which had resulted in an arrest
for domestic violence.  <u>Id.</u> 503-04.  Plaintiff completed a "fast
track" alcohol-cessation program in October of 1997.  <u>Id.</u> at
264.  The record indicates Plaintiff remained abstinent from
alcohol from 1997 through at least December 31, 1999.

In the record is a report by a Mr. William Haase dated
September 25, 1997, based on his "full ASI interview" with

---

[1] Plaintiff's earnings record shows minimal earnings from 1982 through
1989.  R. at 161.  Plaintiff earned slightly more income from 1991 through
1993.  The earnings record shows no earnings after 1994, when Plaintiff was
discharged from the Army.  <u>Id.</u>

Plaintiff.  Id. at 276.  The transcript is not legible regarding Mr. Haase' identity or the purpose of the interview.  Plaintiff reported he suffered chronic back spasms, chronic arthritics, and pains in his shoulders and knees.  Id. at 276.  Plaintiff told Mr. Haase he took Tylenol for pain.  Id.  Plaintiff reported he had "significant periods in which he experienced serious problems getting along with his sexual partner/spouse, his close friends and his neighbors."  Id. at 278.  Plaintiff reported serious depression and serious anxiety and tension. Id.  Plaintiff also stated he had trouble understanding, concentrating and remembering, and that he had trouble controlling violent behavior.  Id. at 278.

Plaintiff was seen at the Long Beach, California, Veterans Administration ("VA") hospital on November 4, 1997. Id. at 430.  Plaintiff reported he was sleeping better, six to seven hours per night, that his appetite was good and his energy level was improving.  Id.  Plaintiff stated his concentration was "ok", and that he was "still depressed but improving..." Id.

Plaintiff was again seen at the Long Beach VA hospital on March 5, 1998.  Id. at 377.  The physician's notes indicate Plaintiff had slipped and hurt his lower back, although he did not fall.  Id.  At that time, the physician signed a one-day work release for Plaintiff, diagnosing back pain.  Id. at 379.

Plaintiff was seen at the Long Beach VA hospital on March 10, 1998.  Id. at 261.  Plaintiff stated he had not taken his Wellbutrin or Elavil for about one month and he said he could feel himself becoming more depressed without the

medication.  _Id._  Plaintiff stated "he feels well maintained when on his current med."  _Id._  _See also_ _id._ at 497.  Another evaluation in the record by a registered nurse dated March 10, 1998, indicates Plaintiff was depressed, with blunted affect, but that Plaintiff's thought processes were logical, and that his memory and cognition were intact.  _Id._ at 330.

The record is largely devoid of legible evidence regarding Plaintiff's medical condition from April of 1998, through January of 1999.  In his statement of facts in support of his motion for summary judgment, Plaintiff does not discuss facts regarding his medical condition from March 10, 1998, through January 27, 1999.  _See_ Docket No. 18 at 8.  Plaintiff's primary complaints to his physicians at this time appear to be gastrointestinal and related to his back and knee pain.

Plaintiff was seen at the VA hospital on August 11, 1998, and indicated his antidepressant medication made it difficult for him to concentrate.  R. at 355.  A physician's note dated September 8, 1998, indicated Plaintiff had cancelled his last two appointments.  _Id._ at 354.  A physician's noted dated September 30, 1998, stated Plaintiff's lower back pain was making it difficult to sit for prolonged periods, and he requested a medical release from his classes.  _Id._ at 352.

In October of 1998, Plaintiff was referred to a chronic pain management program.  _Id._ at 348.  In October of 1998 Plaintiff reported to VA hospital staff that he was having a "hard time" accepting his disability, i.e., his pain, but that he was "coping somewhat better."  _Id._ at 347.  A physician's note dated November 23, 1998, indicated Plaintiff wanted a

refill of his vicodin, and that he was going to "try and get this medication from his psychiatrist. Says he is leaving town for the holiday tonight." Id. at 496. A physician's report dated January 6, 1999, indicates Plaintiff's mental condition was "stable," although Plaintiff reported experiencing panic attacks. Id. at 347. On December 31, 1998, Plaintiff's primary care physician at the VA hospital, Nurse Practitioner Mandala, received a letter from Plaintiff asking him to provide a statement for the Social Security Administration indicating he was 100% disabled and "unable to work. Also increasing his vicodin use." Id. at 495. The record indicates that, at that time, Ms. Mandala stated she was "unable to certify disability & unwilling to continue prescribing vicodin." Id.

Plaintiff filed his application for disability benefits on January 26, 1999, alleging he had been disabled since September of 1997. R. at 158-66.

Plaintiff was seen at the Long Beach VA hospital on January 27, 1999, for a mental health interview regarding his referral to a chronic pain management program. Id. at 249. Plaintiff reported he experienced lower back pain, which was caused by an accident and a fall down a flight of stairs in 1991. Id. Plaintiff also reported degenerative bone disease, concentrated primarily in his knees. Id. Plaintiff declared his knee pain "[wa]s exacerbated only during certain physical activities" and that he "use[d] a cane during times when pain [made] it difficult for him to ambulate." Id. at 249.

The VA hospital physician noted Plaintiff's pain "severely limits his ability to work, engage in sexual

activities, and perform household chores.  His pain moderately limits his ability to sleep, take part in recreational activities, and perform personal hygiene tasks." <u>Id.</u>  The physician further recorded: "Patient has a history of depression and is taking Wellbutrin and Elavil to treat symptoms, including mild passive SI." <u>Id.</u> at 250.  Plaintiff stated he had been unemployed since 1994, that he received veteran's disability payments, and that it was "not a priority for him to regain employment." <u>Id.</u>

Tests conducted that day indicated Plaintiff was not experiencing a high-moderate to severe depressive episode. <u>Id.</u> The physician diagnosed pain disorder with both psychological factors and as a result of a general medical condition. <u>Id.</u> The physician also diagnosed Plaintiff as suffering from a recurrent major depressive disorder and an anxiety disorder, not otherwise specified. <u>Id.</u>  The physician also opined Plaintiff experienced severe limitations in social and occupational functioning, which arose from stressors related to chronic pain. <u>Id.</u> at 250-51.  The doctor assessed Plaintiff as having a Global Assessment of Functioning ("GAF") score of 45.[2]

In February of 1999 Plaintiff reported to his physician that he felt his depression was "getting better". <u>Id.</u> at 248.

---

[2] The GAF is one of the five axes of the diagnostic system described in the Diagnostic and Statistical Manual of Mental Disorders (4th edition), the "DSM-IV", and considers psychological, social, and occupational functioning.  A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." DSM-IV at 30.  A GAF score of 21-40, on a 100 point scale, indicates multiple symptoms affecting all levels of functioning and a GAF score of 41-70 indicates severe symptoms or serious impairments in social or occupational functioning.

1   Plaintiff was taking Elavil for his depression at that time.
2   <u>Id.</u> at 248.

3          In February of 1999, Plaintiff sought and received a
4   medical withdrawal from California State University, Long Beach.
5   <u>Id.</u> at 343.  Plaintiff indicated his disability began December
6   1, 1998.  <u>Id.</u> at 342.  Plaintiff averred withdrawal was
7   requested due to his lower back pain.  <u>Id.</u>

8          Plaintiff was scheduled for fourteen physical therapy
9   appointments for his chronic low back pain on or about February
10  24, 1999.  <u>Id.</u> at 337.  Plaintiff attended only three of the
11  scheduled appointments.  <u>Id.</u>

12         In a disability report filed February 23, 1999,
13  Plaintiff asserted he was no longer able to work due to chronic
14  low back pain, gastrointestinal problems, knee problems,
15  problems with his left shoulder, and major depression.  <u>Id.</u> at
16  163.  Plaintiff stated his medical disabilities prohibited him
17  from working because he was "unable to move freely," and because
18  he had "periods of incapacitation, depression, severe bouts of
19  back pain and subsequent numbness, [and] abdominal pain."  <u>Id.</u>
20  Plaintiff averred his illnesses first bothered him in early
21  1994, and that he became unable to work on or about March 31,
22  1994.  Plaintiff also stated he had worked after his
23  disabilities first bothered him.  <u>Id.</u>  Plaintiff noted he had
24  previously served in the United States military and that he
25  received a medical disability discharge from the military.  <u>Id.</u>
26  at 163.  Plaintiff asserted he had been hospitalized for
27  depression in September of 1997.  <u>Id.</u>  At the time of his
28  application, Plaintiff was taking Flexaril, Wellbutrin, Elavil,

1   and Prevacid.  Id. at 168.

2         Plaintiff completed a pain questionnaire on or about
3   March 5, 1999.  Id. at 176-78.  Plaintiff stated his pain began
4   to occur in 1991.  Id. at 176.  Plaintiff reported his pain was
5   located in his mid to low back, left shoulder, and in his knees.
6   Id.  Plaintiff stated the pain radiated down his legs and
7   resulted in numbness in his feet.  Id.  Plaintiff averred the
8   pain occurred every day, and was caused by bending, twisting,
9   stooping, mild exertion, tension, stress, and long periods of
10  walking, sitting, or standing.  Id.

11        Plaintiff further stated he took Flexaril and Vicodin
12  as needed, five to seven days per week, and that the medication
13  relieved his pain for about 30 minutes to an hour.  Id.
14  Plaintiff alleged the medication caused constipation and
15  fatigue.  Id.  Plaintiff also utilized other pain mediation
16  techniques to relieve his pain, including stretching,
17  whirlpools, and application of ice and heat.  Id. at 177.
18  Plaintiff stated that, despite his pain, he could do light
19  household chores, work on the computer, read, and watch
20  television.  Id.  Plaintiff alleged he could no longer
21  concentrate.  Id. at 176.  Plaintiff declared he could no longer
22  engage in strenuous activity, employment, sports, or sex, due to
23  his pain.  Id.  Plaintiff further stated he could walk for one-
24  quarter mile, stand for 20 minutes at a time, and sit for 20 to
25  60 minutes at a time.  Id.

26        In a Daily Activities Questionnaire completed on or
27  about March 5, 1999, Plaintiff described his daily activities as
28  stretching and light housework, and reading and studying.  Id.

at 179.   Plaintiff related he rested in the afternoon and that
he had difficulty sleeping at night because of muscle spasms and
acid reflux.   Id. at 179.   Plaintiff reported he took Elavil to
sleep each night.   Id.   Plaintiff also alleged he had difficulty
putting on his shoes and taking care of his feet.   Id. at 179.
Plaintiff stated he cooked a simple meal about once a week, and
that he did very limited grocery shopping because he had
difficulty loading and unloading groceries.   Id. at 180.
Plaintiff stated he could do limited cleaning, including dusting
and sweeping or vacuuming.   Id.

Plaintiff also asserted in the questionnaire that he
"noticed that my concentration and memory are compromised by
episodes of pain.  I often watch a taped [television] show more
than once because I cannot remember what happened!!"   Id. at
181.   Plaintiff disclosed he read from one to three hours per
day, including "fiction books, computer magazines & sports
magazines.  I frequently have to re-read to understand."   Id.
Plaintiff stated that he left his house during the week to go to
the VA hospital, to visit his parents, and to run errands, but
that "going out often creates anxiety."   Id.

With regard to his ability to get along with others,
Plaintiff alleged "personal relationships are taxed by my
[irritability] or my perceived thoughts about their failure to
understand my situation."   Id. at 182.   Plaintiff further
averred he was

> very social prior to the onset of depression
> dramatically changed my social outlook.   I
> feel I have very little to offer and I feel
> like a failure consequently, I fear
> interaction with others because they may ask

-16-

> about personal things like work etc.  Range
> of motion and pain prevent many or most
> social outings.

Id.

With regard to his mental abilities, Plaintiff declared he had "tried higher education but I have repeatedly failed courses because I cannot concentrate during lectures with reading I have to highlight things and go over them several times."   Id. at 183.[3]   Plaintiff stated he was frustrated by verbal instructions.   Id.   Plaintiff also reported he took Elavil and Wellbutrin for depression, analgesics and Flexaril for pain, and Prevacid and cisapride (Propulsid) for his stomach.   Id. at 183.

In response to the question regarding how his condition kept him from working, Plaintiff stated:

> Limited range of motion, back pain & spasms,
> depression severely limit my capabilities
> poor physical health coupled with depression,
> loss of concentration and anxiety about my
> future preclude employment.

Id. at 183.

A Mental Residual Functional Capacity Assessment was completed by a state agency physician on April 21, 1999.   Id. at 236-39.   The physician opined Plaintiff did not have severe or disabling mental symptoms, and concluded "Claimant is capable of following simple instructions."   Id. at 238.   On April 21, 1999, a Psychiatric Review Technique summarily concluded Plaintiff

---

[3] A grade report dated June 22, 2001, issued by the DeVry Institute of Technology, indicates Plaintiff received a "B" in financial accounting, business policy, and business policy lab, a "C" in financial accounting lab and a "D" in career development," with an overall GPA of 2.9.  R. at 213. The grad report states that Plaintiff was a student in good standing.  Id. Other school records, which are not legible and not easily interpreted, are also included in the Record on Appeal.  Id. at 214-27.

suffered major depression, resulting in slight limitations in Plaintiff's activities of daily living and social functioning. Id. at 306.   The reviewer concluded the psychiatric disability only seldom limited Plaintiff's ability to concentrate or complete tasks in a work setting.   Id.

Plaintiff's January 1999 application for disability insurance benefits was initially denied on April 28, 1999.   Id. at 95.

In April of 1999, Plaintiff was receiving outpatient treatment at the Long Beach, California, VA hospital for both "physical and emotional" problems.   Id. at 240.   On June 30, 1999, progress notes indicate Plaintiff was prescribed methocarbamol (a muscle relaxer), amitriptyline (an antidepressant), bupropion (Wellbutrin), hydrocodone (Vicodin), lansoprazole (used to treat gastrointestinal ailments) and cisapride.   Id. at 241.   Plaintiff reported he had completed a pain management program which was helpful, but that he still needed six hydrocodone per day to manage his pain.   Id. Plaintiff declared he had quit taking cisapride due to headaches.   Id.   Plaintiff was assessed as experiencing depression, which was being followed by the hospital's psychiatric services department, and variable gastrointestinal distress, which was generally controlled with medication, and "Poss CTS".   Id. at 242.

Plaintiff submitted to a complete psychiatric evaluation requested by the California Department of Social Services, on or about March 28, 1999.   Id. at 228.   The examiner, Dr. Ogbeche, a psychiatrist, noted Plaintiff was

-18-

receiving disability benefits from the Veteran's Administration, stating "He is 70% service connected." <u>Id.</u>  Plaintiff told the doctor he had tried going back to school after his discharge from the Army in 1994, but that "he could not continue due to pain.  He has been trying to study computers, but has not been able to do so because of the spasms that he gets.  He misses classes, and had to withdraw medically because of his severe pain..." <u>Id.</u> at 228.

Plaintiff stated his memory was "okay," but that his concentration was "terrible." <u>Id.</u>  Plaintiff stated he had "problem[s] remembering things due to his muscle spasms.  The patient also describes himself as being depressed, irritable, feeling hopeless and worthless with poor self-esteem." <u>Id.</u> at 229.  Plaintiff reported he lived with his family, but that he did not visit with friends. <u>Id.</u> at 230.  Plaintiff stated he could shop for himself, bathe himself, and feed himself. <u>Id.</u>  Plaintiff further communicated that, on a daily basis, he did stretching, reading, drawing, and computer work. <u>Id.</u>  Dr. Ogbeche concluded Plaintiff suffered from low back pain, pain disorder with psychological factors, and with moderate psychosocial stressors. <u>Id.</u> at 231.  The doctor opined Plaintiff had a GAF (Global Assessment  of Functioning) of 70. <u>Id.</u>

Dr. Ogbeche concluded in a "Functional Assessment" that:

> The history, presentation and mental status examination revealed no evidence of cognitive deficits, perceptual disturbances or delusional disorders at this time.
> The patient has no restrictions in his daily

1  |  activities,  and  has  no  difficulty  in
2  |  maintaining  social  functioning.   The  patient
   |  has  no  difficulties  with  concentration,  and
3  |  had  no  episodes  of  emotional  deterioration
   |  during  the  examination.    The  patient  is
4  |  capable  of  understanding,  remembering  and
   |  carrying  out  simple  instructions.    He  is
5  |  capable  of  responding  appropriately  to  co-
   |  workers  and  superiors  in  the  workplace.   He
6  |  is  capable  of  performing  work  activities  on
   |  a  consistent  basis,  without  any  special  or
   |  additional  supervision.
7
8  | Id. at 231.

9       In August of 1999, the Social Security Administration

10 sought a file review by a Dr. Mallare, to assess the severity of

11 Plaintiff's  mental  impairments.    Id.  at  309-23.    In  an

12 evaluation made after reviewing the record, signed August 31,

13 1999, Dr. Mallare concluded Plaintiff had "adequate memory,

14 understanding [and] concentration to perform simple repetitive

15 tasks in situations with minimal social contact." Id. at 312.

16       On  September  1,  1999,  Plaintiff's  January  1999

17 application  for  disability  benefits  was  denied  upon

18 reconsideration.  Id. at 96.

19       In September of 1999, Plaintiff was evaluated by Dr.

20 Dorsey, a psychiatrist and neurologist.  Id. at 401-09.  Dr.

21 Dorsey  recorded  Plaintiff's  psychiatric  complaints  as

22 depression, with only a few days per month when he felt well.

23 Id. at 401.  Plaintiff believed his pain was the source of his

24 depression.  Id. at 402.  Plaintiff also complained of insomnia,

25 anxiety, irritability, impaired memory and concentration "most

26 of the time," inertia, feelings of worthlessness and failure,

27 and decreased sociability.  Id.  Plaintiff told Dr. Dorsey that

28 he had been evaluated for depression at a VA outpatient clinic

in 1995.  Id. at 403.  Plaintiff reported he attended school part-time and that he shared the housework, shopping, cooking, and child supervision with his live-in girlfriend, and that he could occasionally drive a car.  Id. at 405.

Dr. Dorsey concluded Plaintiff suffered from "major depression, moderate, chronic," and assessed a GAF of 60, with moderate mental symptoms and impairment.  Id. at 407-08.  Dr. Dorsey opined the "best" GAF Plaintiff had experienced in the past year was 60.  Id.  Dr. Dorsey stated: "He would have moderate disability from a psychiatric viewpoint alone with respect to his ability to engage in gainful employment in an open labor market... It is much more likely than not that the veteran's current major depression is a consequence of the physical injuries he sustained ..."  Id. at 408.

In November of 1999, the Los Angeles Regional Office of the Department of Veterans Affairs issued a "Rating Decision." Id. at 526.  The purpose of the evaluation was Plaintiff's knee problems, "currently evaluated as 10 percent disabling," and a possible "[s]ervice connection for depression as secondary to the service-connected disability of mechanical back pain s/p fracture T12."  Id.  The VA evaluator concluded "service connection for depression has been established as related to the service-connected disability of mechanical back pain s/p fracture T12.  This condition is evaluated as 10 percent disabling from October 27, 1997."  Id. at 527.

The evaluator continued:

An evaluation of 10 percent is granted
whenever there is occupational and social
impairment due to mild or transient symptoms

-21-

> which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress; or symptoms controlled by continuous medication. ... [Plaintiff] was described [by the VAMC Long Beach] as generally dysthymic but otherwise attentive when present.

Id. The VA evaluator further noted: "The evidence shows that he is in full time study pursuing a business accounting degree..." Id. The evaluator then opined Plaintiff would have "moderate difficulty engaging in gainful employment." Id.

Physician's notes entered August 15, 2000, by Plaintiff's treating physician state "'Pt routinely misses appts and then comes for non scheduled appts requesting his narcotic.' Will not renew any more unless pt keeps his appointments next time." Id. at 470.

In November of 2000, Plaintiff's doctor noted Plaintiff was experiencing "variable flare ups of back pain. Has just started a new term at school this week. Plans to graduate from program in June.... States he feels pretty good today. Still has occ bouts with Depression. Missed last appt with psych...." Id. at 469.

In June of 2001, Dr. Sokolski, a psychiatrist, began treating Plaintiff at the Long Beach VA hospital. Id. at 682. Dr. Sokolski noted in the record that, in his opinion, Plaintiff had been unable to work since 1996. Id. at 682, 946. Dr. Sokolski opined Plaintiff had moderate to marked limitations in his daily mental activities. Id. at 941-42.[4]

---

[4] Plaintiff's medical records through 2005 are in the Administrative Record at Docket No. 15. However, because the ALJ's decision involved evaluating Plaintiff's condition on or before December 31, 1999, the Court will not discuss the later medical records except to the extent the Appeals

A hearing regarding Plaintiff's 1999 application for disability benefits was conducted on July 10, 2001. Id. at 1051-93. Plaintiff was represented by counsel at the hearing. Id. at 1051. At the hearing Plaintiff testified his depression was caused by the inability to do things, and that he felt unmotivated and without purpose. Id. at 1087. Plaintiff testified he was "confused all the time," and that he was forgetful. Id. Plaintiff testified he was not sure if the medication he took for his depression was helping or not. Id.

Plaintiff was able to return to work by January of 2002. Id. at 544. In March of 2002 Plaintiff's physician noted his "medication is helping with depression. He has been working teaching computer classes. He has been taking Zoloft [], Wellbutrin, [] quetiapine [an anti-psychotic medication] [], and gabapentin [a pain medication] []... He states that he feels a little tired but otherwise has no side effects." Id. at 512. Doctor's notes from June 5, 2002, indicate Plaintiff had a "new baby at home, a month old.... Went back to work today. He cont to teach computers at vocation school... Depressive sx come and go...." Id. at 539.

A second hearing regarding Plaintiff's 1999 application for disability benefits was conducted on August 7, 2002, at which the ALJ heard additional testimony from a medical expert and a vocational expert. The ALJ issued his decision denying benefits on September 17, 2002.

_____

Council, the ALJ, or the parties deemed specific opinions relevant to the issues before the Court.

The record indicated Plaintiff was hospitalized for three weeks in 2003 after a suicide attempt. Id. at 924. In November of 2004 Plaintiff "stated that [he was now] receiving 100% SC from the V.A. helped with his stress." Id. at 965. In April of 2005 Plaintiff had moved to Arizona, although he was seen at that time by Dr. Sokolski at the Long Beach VA hospital. Id. at 973. Plaintiff reported his medications for his mental state were helpful and that he was experiencing "no side effects from the medications. He states that his condition has been stable. He has less financial stress compared to before." Id.

Upon remand from the Appeals Council, a third hearing regarding Plaintiff's 1999 application for disability benefits was conducted before the ALJ on September 13, 2005. Id. at 1116-48. At that time Plaintiff testified he could not work because he had a hard time remembering things on "almost" a daily basis and because he was forgetful. Id. at 1122. Plaintiff averred he could not work because he felt suicidal on a daily basis. Id. at 1122. Plaintiff testified that, despite his mental problems, he had been in a relationship for approximately ten years, and that both he and his girlfriend were supported by his veteran's disability benefits. Id. at 1124. Plaintiff further testified that, despite his suicidal ideology, he was planning a wedding for September of 2005. Id. at 1126. Plaintiff testified he had been fired from his teaching employment in 2002. Id. at 1125.

Plaintiff stated the symptoms of depression he experienced were feeling "down and not very energetic. It's hard to find a reason to want to stay alive some days, most

1  days." <u>Id.</u> at 1126.  Plaintiff also testified that he suffered
2  from anxiety and that he heard voices.  <u>Id.</u> at 1128-29.

3       The ALJ concluded that, during the relevant time
4  period, between September 15, 1997, the alleged date of onset of
5  disability, and December 31, 1999, when Plaintiff was last
6  insured for benefits, Plaintiff could have performed a full
7  range of light work, with alternate sitting and standing and
8  minimal limitations in his mental functioning, on a regular and
9  continuing basis.  Because Plaintiff was able to do work during
10 that time period despite his ailments, the ALJ concluded,
11 Plaintiff was not disabled as that term is defined by the Social
12 Security regulations.  <u>Id.</u> at 28.  The ALJ also stated that,
13 because Plaintiff was "found not disabled, it is unnecessary to
14 consider the issue of whether or not drug addiction and/or
15 alcoholism is a contributing factor material to the
16 determination of disability." <u>Id.</u>

17      The ALJ concluded Plaintiff had severe impairments,
18 i.e., mild degenerative changes in his lumbar spine area and
19 gastroesophageal reflux disease with peristalsis.  <u>Id.</u> at 29.
20 The ALJ further stated: "His pain disorder with psychological
21 factors, major depressive disorder, and alcohol dependence in
22 complete long-term remission were non-severe during the time
23 period under consideration..." <u>Id.</u> at 29.

24      The ALJ further stated "If the claimant's report of
25 symptoms is credible, he would have little or no capacity to
26 function on a regular and continuing basis.  If not credible, he
27 would have minimal limitations." <u>Id.</u> at 30.  The ALJ noted
28 that, after Plaintiff's alleged onset date, he had engaged in

-25-

substantial gainful activity in 2002, based on his earnings record. Id. at 35.

The ALJ further concluded that Plaintiff was not "totally" credible with regard to Plaintiff's allegations regarding his functional limitations during the period in question. Id. The ALJ found Plaintiff had "minimal limitations in his ability to function mentally on a regular and continuing basis." Id. at 36.

The ALJ determined that:

> considering the claimant's age, educational background, work experience, and residual functional capacity, he is capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding is therefore reached within the framework of Medical-Vocational Rule 202.21 that he was not under a disability which began at any time during the period September 15, 1997, his alleged onset date, through December 31, 1999, his date last insured.

Id. at 36.

**Plaintiff alleges the ALJ erred by finding he did not have "Severe Pain Syndrome" or a severe mental disorder prior to his date last insured.**

The issue before the Court is not whether Plaintiff's condition became disabling after December 31, 1999, but whether the record supported the ALJ's conclusion that, on or before his date last insured, Plaintiff was not disabled because he was capable of substantial gainful activity despite his mental or physical limitations. Although Plaintiff was assessed with a GAF score of 45 in January of 1999, which would indicate an inability to function in a work-related setting at that time,

one month later Plaintiff reported to his physician that he felt his depression was improving.   A Mental Residual Functional Capacity Assessment completed by a state agency physician on April 21, 1999, concluded Plaintiff did not have severe or disabling mental symptoms, and concluded Plaintiff was able to follow simple instructions.  R. at 238.   On April 21, 1999, a Psychiatric Review Technique summarily concluded Plaintiff's ability to concentrate or complete tasks in a work setting was only seldom limited.   Id. at 306.   Dr. Dorsey concluded in September of 1999 that Plaintiff suffered from moderate major depression and assessed a GAF of 60, indicating an ability to function in a work-related setting  Id. at 407-08.   Dr. Dorsey opined the "best" GAF Plaintiff had experienced in the past year was 60.   Id.   In November of 1999 the VA evaluator noted Plaintiff was attending school full-time and opined Plaintiff would have "moderate difficulty engaging in gainful employment." Id. at 517.

The bulk of the record indicates that Plaintiff's mental condition after December 31, 1999, after his date last insured, alternately improved and deteriorated, including an eventual apparent relapse in Plaintiff's alcohol and drug use. The record indicated Plaintiff was hospitalized for three weeks in 2003 after a suicide attempt.   Id. at 924. However, the record also indicates that, after his date last insured Plaintiff's condition was not so disabling that it prevented him from completing a course of schooling in 2001 and subsequently working as a teacher for approximately six months.   The record also indicates that, after Plaintiff's severe bout with

depression in 2003, after treatment, in 2005 Plaintiff was planning a wedding and a future with his long-term girlfriend and that Plaintiff participated in parenting his toddler child.

The ALJ's conclusion that Plaintiff was capable of performing work available in the national economy despite his limitations arising from his chronic pain and depression is supported by substantial evidence in the record. All of the evidence in the record before the ALJ with regard to Plaintiff's mental residual functional capacity prior to his date last insured indicated Plaintiff suffered from affective disorder, i.e., depression, at least partially as a result of his chronic physical pain. However, no treating physician, examining physician, or reviewing physician opined between 1997 and December 31, 1999, that Plaintiff suffered "severe pain syndrome" or a more-than-moderately severe depressive disorder, which resulted in a complete inability to work.

**Plaintiff contends the ALJ erred by relying "solely" on the residual functional mental capacity assessment of Dr. Ogbeche.**

There was substantial evidence in the record to support Dr. Ogbeche's assessment of the degree to which Plaintiff's depression affected his ability to work. Although a functional assessment by a then-treating physician based on clinical findings would be entitled to greater weight than Dr. Ogbeche's opinion, there is no opinion in the record from a psychiatrist who treated Plaintiff from September of 1997 through December 31, 1999, which contravenes the opinion of Dr. Ogbeche with regard to the  severity of Plaintiff's mental capacity.

-28-

Dr. Ogbeche was not a reviewing psychiatrist, but an examining psychiatrist. Although a single consultative examination alone cannot constitute substantial evidence to support the ALJ's conclusion regarding Plaintiff's residual mental capacity, Dr. Ogbeche's assessment is supported by that of Dr. Dorsey, another examining psychiatrist, the 1999 VA evaluator, and the opinion of the reviewing psychiatrist, Dr. Mallare. Accordingly, the ALJ did not err as a matter of law in adopting the residual mental functional capacity of Dr. Ogbeche.

The ALJ gave specific and legitimate reasons, which are supported by substantial evidence in the record, i.e., the opinions of Dr. Ogbeche, Dr. Dorsey, the VA examiner, and Dr. Mallare, for rejecting the Plaintiff's assertion, and Dr. Sokolski's later conclusion, that Plaintiff was completely disabled because of his pain and the resulting allegedly disabling depression. See Melloni v. Massanari, 98 Fed. App. 659, 661-62 (9th Cir. 2004) ("the ALJ's well-considered analysis of the record evidence in this case is sufficient to overcome the presumption in favor of a treating physician."); Morgan, 169 F.3d at 600 (concluding the opinion of non-examining physician, alone, is sufficient to support an ALJ's decision finding a claimant not disabled, if the non-examining physician's opinion is in accordance with independent substantial evidence in the record); Saelee, 94 F.3d at 522-23(holding that the "ALJ's primary reliance on the findings of ... a medical consultant was not an abuse of discretion" because other evidence in the record supported the non-treating, non-examining physicians' findings); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)

(stating an ALJ need not accept the opinion of a doctor if the opinion is conclusory and inadequately supported by clinical findings); <u>Allen v. Heckler</u>, 749 F.2d 577, 579, 580 (9th Cir. 1984) (holding that if the evidence supports more than one rational interpretation, this Court must uphold the decision of the ALJ and must not second-guess the ALJ's choice among conflicting medical opinions).  Accordingly, Plaintiff is not entitled to reversal of the ALJ's opinion based on this claim.

**Plaintiff also contends the ALJ erred by accepting the opinion of Dr. Ogbeche regarding Plaintiff's residual mental functional capacity, and rejecting the opinions of Dr. Sokolski and Dr. Messinides.**

Dr. Messinides and Dr. Sokolski, who examined and treated Plaintiff, opined that Plaintiff was "totally disabled." However, these doctors offered their opinion of Plaintiff's condition in July of 2004.  <u>See</u> R. at 927 & 937.  Plaintiff was not insured for disability insurance benefits after December 31, 1999, and, accordingly, the opinion of Dr. Ogbeche, who examined Plaintiff in 1999, was more probative of the decision before the ALJ than opinions rendered after that date.  Although Dr. Sokolski opined Plaintiff had been disabled since 1996, his opinion in this respect was based solely on his review of Plaintiff's VA hospital records and not on his personal observation or treatment of Plaintiff prior to his date last insured.  Although the ALJ could not reject the 2004 opinions solely because they were retrospective, <u>see</u> <u>Petersen v. Barnhart</u>, 213 Fed. App. 600, 602 (9th Cir. 2006), the ALJ did not err by "rejecting" the opinions of Dr. Messinides and Dr.

-30-

Sokolski as to Plaintiff's condition on or before December 31, 1999, because the opinions regarding his condition at that time were not supported by other evidence in the record and, accordingly, Plaintiff is not entitled to relief on this claim. See <u>Bodnarchuk v. Barnhart</u>, 70 Fed. App. 411, 413 (9th Cir. 2003).

**Plaintiff further asserts the ALJ erred by failing to examine or discuss the Veteran's Administration 2004 decision concluding Plaintiff was "100%" disabled.**

The Court concludes the ALJ did not err by not discussing the 2004 VA decision referenced by Plaintiff because the ALJ impliedly adopted the explained VA decision issued during the relevant time period, i.e., 1999.[5]   In 1999 the VA evaluator determined that Plaintiff was not "disabled," as that term is defined by the Social Security regulations.   Instead, the VA determined in 1999 that Plaintiff's physical disabilities had also resulted in a "10%" mental disability, i.e., depression, which was associated with his physical conditions. The 1999 VA decision supports the ALJ's opinion that Plaintiff had, at that time, only slightly or moderately limited with regard to his mental abilities to perform work-related tasks.

---

[5] Plaintiff states:
The ALJ also failed to even mention that Mr. Faulkner received 100% service-connected VA disability benefits. Treatment records reflect that Plaintiff was receiving 70% service-connected benefits for his physical conditions (Tr. 288), and later 100% service-connected benefits for his mental conditions (Tr. 965). Despite this, the ALJ never requested a copy of the VA rating decision or even mentioned this important fact in his decision.
Docket No. 17 at 6.  The Court notes the Record at 965 is a doctor's note regarding the VA's 2004 decision, not a copy of the VA evaluation as contained in the record regarding the 1999 VA decision.

-31-

The fact that the VA evidently determined in 2004 that, at that time, Plaintiff was entitled to 100% service-connected benefits based on his medical condition could not be dispositive with regard to Plaintiff's medical condition between 1997 and 1999.

**Plaintiff argues the ALJ erred by finding his mental impairments and "severe pain syndrome" were not severe conditions prior to December 31, 1999, at step 2 of the sequential evaluation.**

Plaintiff argues the ALJ erred by not proceeding past step 2 of the sequential analysis because the evidence supported a finding that Plaintiff's mental impairments and his "pain syndrome" were "severe" impairments as that term is defined by the Social Security regulations.  Plaintiff argues:

> The record clearly demonstrates that prior to December 31, 1999 Mr. Faulkner had severe mental limitations and a severe pain syndrome.  The substantial medical record documents clinical findings and symptomatology of pain in the lower back.... and, depressive and anxiety symptoms of difficulty with concentration and remembering [R. at 278], anger and irritability [R. at 278, 501]... low energy [250], and suicidal ideation [R. at 250].

Docket No. 17 at 2-3.  Plaintiff contends these findings "could reasonable result in the symptoms claimed, and have resulted in more than a slight abnormality in Mr. Faulkner's ability to perform basic work duties."  Docket No. 17 at 3.

The ALJ concluded Plaintiff had severe impairments, i.e., mild degenerative changes in his lumbar spine area and gastroesophageal reflux disease with peristalsis.  R. at 29. The ALJ further stated: "His pain disorder with psychological factors, major depressive disorder, and alcohol dependence in

1  complete long-term remission were non-severe during the time

2  period under consideration...” Id. at 29.

3         At step 2 of the sequential analysis, the ALJ assesses

4  whether the claimant has a medically severe impairment or

5  combination of impairments which significantly limit his ability

6  to do basic work activities.

7         The Social Security Regulations regarding step 2

8  provide:

9              (a) Non-severe impairment(s). An impairment
               or combination of impairments is not severe
10             if it does not significantly limit your
               physical or mental ability to do basic work
11             activities.
               (b) Basic work activities. When we talk about
12             basic work activities, we mean the abilities
               and aptitudes necessary to do most jobs.
13             Examples of these include--
               (1) Physical functions such as walking,
14             standing, sitting, lifting, pushing, pulling,
               reaching, carrying, or handling;
15             (2) Capacities for seeing, hearing, and
               speaking;
16             (3) Understanding, carrying out, and
               remembering simple instructions;
17             (4) Use of judgment;
               (5) Responding appropriately to supervision,
18             co-workers and usual work situations; and
               (6) Dealing with changes in a routine work
19             setting.

20  20 C.F.R. § 404.1521 (2007).

21         A medically severe ailment may be a mental ailment.

22  See, e.g., Giese v. Barnhart, 55 Fed. App. 799, 801 (9th Cir.

23  2002). An impairment or combination of impairments is per se

24  not severe if the record evidence establishes the claimant

25  suffers from only a slight abnormality that has “no more than a

26  minimal effect on [the claimant’s] ability to work.” Webb v.

27  Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (internal quotations

28  omitted). If the ALJ finds that the claimant lacks a medically

-33-

severe impairment, the ALJ must find the claimant to be not disabled; however, if the ALJ concludes the claimant does have a medically severe impairment, the ALJ proceeds to the next steps in the sequence. See id. An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence." Id., 433 F.3d at 686-87.

There is substantial evidence (more than a scintilla of evidence and enough evidence that a reasonable mind would accept it as adequate) to support the ALJ's finding that the medical evidence established Plaintiff's "pain syndrome" and depression were not "severe" impairments within the time Plaintiff was insured for disability benefits. See Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005); Bowser v. Commissioner of Soc. Sec., 121 Fed. App. 231, 237-38 (9th Cir. 2005). Compare Webb, 433 F.3d at 687-88. Although Plaintiff's depression improved and deteriorated after his date last insured, there is no evidence in the record his pain or depression were completely disabling for a period of twelve months prior to December 31, 1999. Therefore, Plaintiff is not entitled to relief on this claim.

Additionally, the Court notes that, in this matter, the ALJ evidently proceeded beyond step 2 of the evaluation and considered the limitations imposed by Plaintiff's physical conditions and pain and his depression when assessing whether he had the residual functional capacity to perform work available in the national economy. Therefore, an error in the ALJ's labeling of the severity of Plaintiff's pain and depression was

-34-

not prejudicial and, therefore, not a basis for remanding this matter.  See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1054-56 (9th Cir. 2006); Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).  Even when part of an ALJ's five-step analysis is not linguistically completely clear or exhaustively complete, or precisely factually accurate, some errors are legally harmless, such as errors which do not affect the ultimate result of the analysis.    See Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007); Curry, 925 F.2d at 1131; Booz, 734 F.2d at 1380.  Compare Robbins, 466 F.3d at 885 (stating: "we have only found harmless error when it was clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination,'" and holding an "ALJ's silent disregard of lay testimony about how an impairment limits a claimant's ability to work" was not harmless error); Selassie, 203 Fed. App. at 176 (finding an ALJ's legal error in failing to document his application of the "special technique" for evaluating severity of mental impairments, as required by 20 C.F.R. § 404.1520a, was not harmless error because the claimant had presented a "colorable claim of a mental impairment.").

        **Plaintiff alleges the ALJ erred by not making a "proper" credibility determination.**

        An ALJ must provide "specific, cogent reasons," supported by substantial evidence in the record, for his disbelief of a claimant's statements regarding the claimant's disability.  Lester, 81 F.3d at 834; Bunnell, 947 F.2d at 345. See also Jernigan v. Sullivan, 948 F.2d 1070, 1073 (8th Cir. 1991).  Unless there is affirmative evidence indicating that the

-35-

claimant is actually malingering, the ALJ's reasons for rejecting the claimant's testimony must be clear and convincing. See Lester, 81 F.3d at 834; Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989).  The ALJ must specifically identify what portion of the testimony in the record is credible and what testimony undermines the claimant's complaints.  See Lester, 81 F.3d at 834; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

"To find the claimant not credible the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on *conflicts between his testimony and his own conduct, or on internal contradictions in that testimony*." Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (emphasis added); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (internal citations omitted).  "Where ... the ALJ has made specific findings justifying a decision to disbelieve an allegation ... and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision."   Morgan, 169 F.3d at 600.

An ALJ is not required to accept every symptom of which a claimant complains as rising to the level of a functional limitation.  See Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989) (stating an ALJ is free to accept or reject a claimant's proposed restrictions as long as the decision is supported by substantial evidence).  "[D]isability requires more than mere inability to work without pain.  To be disabling, pain must be so severe ... as to preclude any substantial gainful employment." Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir.

1988)).

The ALJ made specific findings, supported by the record, regarding Plaintiff's credibility.  The Court concludes the ALJ's determination Plaintiff was not completely credible regarding his pain and disability is supported by substantial evidence in the record.  Plaintiff's stated that he could assist with light housekeeping, maintain relationships to the point of parenting and marriage, use a computer, attend school, etc., despite his alleged incapacitating depression and physical pain. Plaintiff alleged he was so distracted by his pain that he could not work at even minimally functional employment and yet Plaintiff was able to successfully attend school during the relevant time period and Plaintiff was able to engage in substantial gainful activity[6] two years after the relevant time period.  Plaintiff declared he had "tried higher education but I have repeatedly failed courses because I cannot concentrate during lectures with reading I have to highlight things and go over them several times."  R. at 183.  However, Plaintiff's grade reports and eventual employment as an instructor indicate he did not repeatedly fail courses.  Id. at 213.  The grade report states that Plaintiff was a student in good standing. Id.  Plaintiff was apparently able to attend classes in 1997, prior to the date he allegedly became disabled, until he left school to attend to an alcohol problem which had resulted in an arrest.  Plaintiff returned to school and attended classes in

---

[6] A claimant is not disabled during a particular time period if she is able to engage in substantial gainful activity ("SGA").  See 20 C.F.R. § 404.1594(b)(3) (2006); Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1459-60 (9th Cir. 1995).

1    1999 and 2000, through and beyond his date last insured.

2         Even if the record permits a different assessment of

3    Plaintiff's credibility, the Court may not reverse the ALJ's

4    decision in this regard unless there is a lack of substantial

5    evidence to support the ALJ's decision, and the Court concludes

6    there is sufficient evidence in the record to reach this

7    standard. See Thomas, 278 F.3d at 959. "Where ... the ALJ has

8    made specific findings justifying a decision to disbelieve an

9    allegation ... and those findings are supported by substantial

10   evidence in the record, our role is not to second-guess that

11   decision." Morgan, 169 F.3d at 600. Plaintiff's case is

12   similar to the reported cases in which the reviewing court held

13   the ALJ's credibility determination was supported by substantial

14   evidence. See Parra, 481 F.3d at 750-51; Morgan, 169 F.3d at

15   600; Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995);

16   Curry, 925 F.2d at 1130 (finding that the claimant's testimony

17   that "she was able to take care of her personal needs, prepare

18   easy meals, do light housework, and shop for some groceries" was

19   inconsistent with her claimed inability to perform all work

20   activity). Compare Robbins, 466 F.3d at 883-84 & n.2

21   (concluding the ALJ committed non-harmless error by giving only

22   "fleeting" mention as to why the claimant's credibility was at

23   question without providing any "narrative," supported to

24   citation to the record, as to why the claimant's claim of pain

25   was not credible).

26        **VI   Conclusion**

27        The Court concludes there is sufficient relevant

28   evidence in the record to support the ALJ's conclusion that

1  Plaintiff was not disabled on or prior to his date last insured.
2  Plaintiff is not entitled to relief on any of his claims of
3  error.

4

5         **IT IS THEREFORE ORDERED** that Plaintiff's Motion for
6  Summary Judgment (Docket No. 11) is **DENIED**, and Defendant's
7  cross-motion for summary judgment (Docket No. 20) is **GRANTED**.
8  Judgment shall be entered in favor of Defendant and against
9  Plaintiff with regard to the charges stated in the complaint.

10        **IT IS FURTHER ORDERED** that, as a result of the Court's
11  determination that judgment in favor of Defendant is
12  appropriate, the Clerk of the Court shall enter judgment
13  accordingly.

14        DATED this 1st day of October, 2007.

15

16

17  _____

18                    Mark E. Aspey
                United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28